IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JAMES WILLSON CHESHER<br>and CHERYL ANN CHESHER<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:15-cv-02123-DCN |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR VACATUR**
**FED. R. CIV. PROC. 60 (b) (6) AND 28 U.S.C. § 455**

Come now plaintiffs and file this their reply brief in support of their motion for vacatur pursuant to Fed. R. Civ. Proc. 60(b)(6) and 28 U.S.C. §455. Plaintiffs reiterate that the motion was filed with the utmost respect for the Court.

### I.     RECUSAL AND VACATUR ARE WARRANTED

#### A. The Plain Terms of the Statute Required Recusal

Defendant does not dispute that the Court owned stock -- in substantial amounts – in three defendants in this case. Nor does it dispute that the Court was aware of its holdings from the outset of the case. Finally, Crane does not dispute that this ownership required recusal under the straightforward terms of 28 U.S.C. §455(b), for as the leading treatise on federal procedure puts it, that statute leaves "no room for discretion." 13D Charles A. Wright, Arthur Miller, Earl Cooper and Richard Freer, *Federal Prac. & Proc*. §3546, pp. 75-77. Crane's only argument, instead, is that because the parties in which the Court owned stock were not in the case, by the time the Court

1

excluded plaintiffs' expert and then granted Crane a summary judgment, "there was either no requirement to recuse or any failure to recuse was harmless." Opposition at 4.

This argument is meritless and should be rejected. Plaintiffs again respectfully maintain that the Court should have recused itself at the outset of this case; had it done so, the rulings in question would not have been made. Moreover, in the unique circumstances of this case, in which the Court's ruling greatly helps the companies in which stock is still held in countless future cases, recusal and vacatur are required to avoid "undermining the public's confidence in the judicial process." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

The contention that recusal was not required in the first place is foreclosed by the plain terms of §455(b)(4). That provision mandates recusal if a judge knows that he "has a financial interest in the subject matter in controversy or in a party to the proceeding." The word "proceeding," of course, means the case as a whole. It does not mean "the particular motion before the court," nor is it confined to a particular point in the progress of a case.

Congress could perhaps have used a term other than "proceeding." If it wished that recusals for financial interest be judged on a motion-by-motion basis, it could have said so. But Congress included no such limitations; rather, it made the rule against financial interests applicable to the "proceeding" as a whole.

When this case was removed to this Court, and for a considerable time thereafter, the Court undisputedly owned substantial amounts of stock in multiple "parties to the proceeding." As such, the Court was required to recuse at that time -- at the outset of the case. The proper course was not to wait to see if all three of those parties left the case; rather, the statute imposed a mandatory duty on the Court to recuse at the outset.

2

**B.  The Failure to Recuse Was Not Harmless Error**

As a fallback, Crane contends that the Court's failure to recuse itself was harmless error because those parties eventually left the case.  As defendant puts it, the statute "recognizes that the need for recusal can be eliminated."  Opposition at 5.  This argument is likewise incorrect.

Crane points out that a court may divest itself of the disqualifying stock ownership, and then continue "presiding over a matter to which substantial judicial time has been devoted…"  Opposition at 5.  That is certainly true, but that is hardly what happened here.  The Court never took any steps to divest itself of the disqualifying stocks, and held them for the duration of the case.

Crane seems to suggest that the "divestment" effectively occurred in this case when the companies in which the Court owned stock left the case.  But defendant cites no authority for the proposition that the requisite "divestment" can take place in this manner.  The two cases it cites are distinguishable.

In *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991), defendants filed a motion in the court of appeals to vacate the lower court's judgment.  After that judgment had been entered, the district court had learned of a disqualifying stock holding, and "immediately upon learning of the [stock holding], he and his wife had sold their shares."  Id. at 561.  The court of appeals believed that the judge hadn't known of his disqualifying stock ownership during the pendency of the case.  Id.  The exact opposite happened in the present case:  the Court knew of its disqualifying holdings from the beginning of the case, and yet took no steps either to recuse itself or to divest itself of the holdings in question.

Defendant's second case is *Union Carbide Corp. v. United States Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir. 1986).  In that case, a class action, the judge presided over the case for over

two years, at which point she married a man who owned stock in two companies that later turned out to be members of the class. Id. at 713. When the defendant finally moved to recuse the district judge, she took no further action in the case, and "all motions were referred to a magistrate or another judge." Id. The judge's husband eventually sold the stock, at which point she resumed control of the case.

Over a dissent, the Seventh Circuit rejected defendant's mandamus petition seeking an order requiring recusal. Crane focuses on this statement by the court of appeals:

> Since the statute forbids only the knowing possession of a financial interest, since Judge Getzendanner relinquished control of the case as soon as she found out about the financial interest, and since she did not assume control until the financial interest was eliminated, at no time was she in literal violation of the statute.

Id. at 714. But again, the exact opposite is true here: the Court knew of its disqualifying interest all along, but retained control of the case throughout. This was not an unknowing error by a district judge who promptly remediated it by selling the stock in question.[1]

The correct approach is set forth in more recent cases. In *Chase Manhattan Bk. v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003), the Second Circuit reversed a judgment entered by Judge Milton Pollack, the same judge involved in the *Kidder, Peabody* case cited by defendant. Judge Pollack had stated that he had learned of the stock ownership in question after a trial had occurred, and had "promptly divested" himself of the holdings. Id. at 124. The court of appeals noted this fact, and also noted that the stock holdings in question were "not even 1% of the particular judge's personal fortune" and that there was "no possibility here that the judge ruled for

---

[1] Another factor in the Seventh Circuit's decision was defendant's delay in bringing the motion, as Crane itself makes clear at p. 7 of its opposition.

4

the banks in order to enrich himself." Id. at 128. Nonetheless, §455(f), upon which Crane relies here, could not save the judgment entered by Judge Pollack:

> In this regard, it is important to understand that judges have an obligation to exercise reasonable effort in avoiding cases in which they are disqualified. Section 455 is not a provision that requires judicial action only after a party to the litigation requests it. The relevant provisions are directive and require some reasonable investigation and action on a judge's own initiative. Indeed, a Section 455(b)(4) conflict is non-waivable by the parties' express consent, much less by their silence. There are important reasons for this. One is the damage to public confidence in the federal judiciary's impartiality that would result from constant recusal motions or recurrent controversies over judges' financial interests in parties to litigation. Another reason is that lawyers for the most part expect judges to disqualify themselves under Section 455(b)(4) without a formal motion. In fact, lawyers do not routinely research judges' financial disclosure forms—the only information available on a particular judge's financial holdings—but even if they did, those forms are generally a minimum of four months out-of-date, i.e., the forms are filed by May 1 and report holdings and transactions for the previous calendar year. Judges therefore bear the principal burden of compliance with that section…
>
> While Section 455(f) allows a judge to divest a newly-discovered disqualifying interest and continue to preside over a case, that divestiture cannot cure circumstances in which recusal was required years before and important decisions have been rendered in the interim. The statutory language, legislative history, and caselaw all support this conclusion.
>
> It is clear from the language of Section 455(f) itself that a curative divestiture must be made upon the "appearance or discovery" of the potentially disqualifying financial interest.

Id. at 130-31 (footnote omitted). So too here: no "curative divestiture" was ever made, and recusal was required at the outset of the case since the Court was aware of the disqualifying holdings.

Crane's position has also been rejected by the Federal Circuit. In *Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012), four oil companies sued the United States. A judge in the Court of Federal Claims entered judgment for each company in varying amounts. Shortly thereafter, he realized that his wife had inherited 97.59 shares of stock in Chevron Corp., the parent of two of the plaintiffs, Texaco and Union Oil. Ultimately, the judge vacated his rulings

as to Texaco and Union Oil, and severed them out of the case, but adhered to his previous rulings as to the other defendants, Shell and Arco. Id. at 1286.

On appeal, the plaintiffs took the same position Crane takes here: that the trial judge was allowed to selectively sever out parties, rather than have his wife sell the stock. The Federal Circuit rejected this position in language that is equally applicable here, and worth quoting at length:

> Here, there is no evidence that the judge's wife divested the Chevron stock and therefore §455(f) is inapplicable. Because the stock was not divested, recusal is mandatory under §455(b)(4), and cannot be waived. Given the lack of divestiture, as soon as he discovered the conflict, the trial judge was required to disqualify himself from the entire proceeding and ask the clerk of court to transfer the case to another judge….
>
> The Oil Companies argue that the judge's decision to sever Texaco and Union Oil satisfied §455(b)(4) because he is no longer presiding over a proceeding in which his spouse has a financial interest. In other words, the Oil Companies suggest that the judge cured the conflict by "divesting" two of the parties from the case. *Although a judge can divest a financial interest to avoid recusal, nothing in the statutory text supports the idea that a judge can avoid otherwise mandatory recusal by severing from the proceeding the parties in which his spouse has a financial interest and transferring those parties to a different judge.* Because the divestment exception set forth in §455(f) applies only to divesting a financial interest in a party, and there is no indication that Congress intended to create an exception whereby a judge can sever or "divest" certain parties from the case to resolve a conflict, we find Plaintiffs' argument is not well-taken. This is particularly true where, as here, there is substantial overlap with respect to the issues involved in the remaining parties' claims, and the matters had been considered jointly throughout the proceedings.
>
> Because the judge's wife owns shares in the parent company of Texaco and Union Oil, §455(b)(4) requires recusal. *See Key Pharms., Inc. v. Mylan Labs., Inc.,* 24 F.Supp.2d 480, 482 n. 2 (W.D.Pa.1998) (noting that, under §455, "the owner of stock in a parent corporation has a direct legal or equitable interest in a controlled subsidiary and the judge should disqualify himself"). The judge's decision to *sua sponte* sever Texaco and Union Oil did not satisfy the statutory requirement of disqualifying himself from the entire proceeding. We emphasize that there is neither an allegation nor suggestion that the judge was unduly influenced by his wife's financial interest, which no one argues was substantial. *The statute does not*

> *require as much—it simply requires recusal whenever financial conflicts of interest exist, regardless of whether those conflicts affect the outcome of the case.* Because the judge was required to recuse himself under §455(b)(4), his failure to do so violated the statute.

Id. at 1290-91 (footnotes omitted, emphasis added).

Finally, as the cases above state, and as the Supreme Court noted in *Liljeberg*, surpa, the salutary purpose of the recusal rules is not only the avoidance of bias in particular cases, but also the preservation of "the public's confidence in the judiciary process. We must continuously bear in mind that "to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Liljeberg*, 484 U.S. at 864, quoting *In re Murchison*, 349 U.S. 133, 136 (1955).

Defendant does not deny that the companies in which the Court owned stock are defendants in many other asbestos cases. Nor does defendant deny that the Court's order has already been cited by another court in a ruling favoring asbestos defendants. Defendant's spin on the Ohio Supreme Court ruling cited by plaintiffs is that it in fact shows that the Court was right. The question is not whether the Court was right or wrong, or whether another court reached the same result after relying on this Court's order. The point is that the Court's ruling indisputably helps defendants in asbestos cases, which means that it helps the companies in which the Court owned stock at the time it issued its rulings. It is regularly being cited by those companies. For a more recent example, see *Coffin v. Ametek, Inc.*, 2020 WL 5552113, *6 n. 12 (D. Me. Sept. 16, 2020) (noting that one defendant had cited this Court's ruling in support of its motion to exclude plaintiff's expert in a mesothelioma case, but distinguishing the situation before it).

In these circumstances, recusal and vacatur is also appopriate under §455(a). That provision requires recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." Plaintiffs respectfully submit that in the unique context of asbestos litigation, in

7

which a ruling in one case will inevitably benefit the same companies in other cases, recusal here would be appropriate under this section. The fortuity that plaintiffs, completely unaware of the Court's conflict, had already resolved the case against the companies in which the Court owned stock by the time summary judgment was granted, should not obscure the fact that the Court's eventual ruling will inevitably help those companies. At a minimum it will be deployed by them in litigation. Accordingly, §455(a) requires recusal here as well.

## II. PLAINTIFFS' MOTION IS TIMELY

Crane also argues that plaintiffs' motion is untimely, asserting that "plaintiffs' counsel chose to wait more than three years" to file their motion. Opposition at 7. This is an utterly baseless contention.

What possible reason would there be for plaintiffs to wait until November 2021 to file this motion, if they had known about a basis for recusal in 2018 as Crane asserts? The answer, of course, is that there is none. The facts concerning the Court's ownership of stock in three defendants were not "publicly available information" in any realistic sense.

As the uncontradicted affidavit of plaintiffs' counsel Peter Kraus, which was attached as exhibit A to plaintiffs' motion, demonstrated, plaintiffs had no knowledge of any of the Court's stock holdings until Mr. Kraus received a call from a Wall Street Journal reporter, James Grimaldi, in late July 2021. Mr. Grimaldi was conducting an investigation into compliance with the recusal rules by federal judges around the country. The results of this investigation led to the publication of a front-page article in the Wall Street Journal, which is attached here as exhibit A.

This article makes clear that such information is hardly "publicly available":

> Violations of the 1974 law almost never become public. Judges' financial disclosures aren't online, are cumbersome to request and sometimes take years to

8

> access….Judges rarely make public the lists of companies on whose cases they shouldn't work.

Exhibit A at 6. Indeed, the affidavit of Cory Powell, a law clerk at Waters & Kraus, which was attached as Exhibit B to plaintiff's motions, details at length the efforts required to obtain even a partial understanding of the Court's holdings over a period of less than 20 years. Certain years' worth of disclosures were available on a privately maintained website (www.judicialwatch.org), but only for the years 2003 and 2008-2011. Mr. Powell had to submit a request for disclosure of other years' reports to the Administrative Office of the United States Courts. This request was submitted on July 23, 2021, the day after Mr. Kraus was contacted by the Wall Street Journal reporter.

The Court's disclosure forms for some years were received by Mr. Powell on August 31, 2021. These forms covered the years 2014-2017. A thumb drive containing reports for the years 2015-2019 was received on October 28, 2021. The present motion was filed four days later.

Mr. Powell's affidavit is uncontradicted. It establishes beyond dispute that the information upon which plaintiffs' motion is based is in no sense "publicly available."

Crane's argument would also seem to suggest that all litigants have an affirmative obligation to inquire into every judge's stock holdings, as soon as a case is assigned to that judge. There is, of course, no such provision in the recusal statute, and defendant cites no case imposing such a requirement. The reason is obvious: as the Wall Street Journal article also notes, "[j]udges are informed if anyone requests to see their disclosures, creating a disincentive for lawyers who might fear annoying judges who might fear annoying judges in whose courtrooms they frequently appear." Id.

Crane cites two cases in support of its timeliness argument, both of which are easily distinguishable. In *Kolon Ind., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 171 (4th Cir.

2014), an antitrust case, plaintiff "knew every fact that eventually predicated its recusal motion, almost a year before it first suggested recusal might be appropriate…and over a year before it finally filed its recusal motion…." Moreover, in related trade secrets litigation before the same judge, plaintiff waited until after "a series of rulings universally adverse" to it before making the recusal motion in the antitrust case. It thus was clear that plaintiff was waiting to see how things turned out before moving to recuse the judge: all of the adverse rulings in the trade secrets case had been made "by the time Kolon filed its recusal motion in the antitrust case. So while Kolon's sandbagging may not be obvious in the isolated context of the antitrust case, a global view of the relevant events makes clear that Kolon held its fire on recusal until after suffering a defect in the trade secrets case." Id. at 171 n. 9.

Crane also cites *Union Carbide*, supra. But there, the judge's ownership of stock in two of the parties was publicly available information, and indeed known by the defendant, 14 months before defendant finally filed its recusal motion. Defendant's counsel admitted that "he was reluctant to move to recuse the judge and did so only at the client's insistence." Moreover, defendant "was distressed by some rulings made…in the interim." 782 F.2d at 716.

None of these circumstances exists in the present case. In both of the cases cited by defendant, there was obvious "sandbagging" going on, in the words of the Fourth Circuit – the party that eventually moved for recusal knew of the facts supporting its eventual motion but waited to see how it fared in front of the judge in question, before moving to recuse him or her. That obviously did not happen here; plaintiffs' counsel had no knowledge of the underlying facts at all. And in each of defendant's cases, the moving party waited over a year; here, plaintiffs moved extremely quickly after learning of the facts underlying their motion.

## CONCLUSION

For all of the above reasons, and those set out in plaintiffs' opening brief, plaintiffs respectfully pray that their motion for vacatur be granted, and that this case be reopened and the summary judgment in defendant Crane Co.'s favor be vacated.

Respectfully submitted,

**THE HARDEE LAW FIRM**

<u>    /s/   Mark W. Hardee</u>
Mark W. Hardee
South Carolina Bar No. 7857
Federal ID:  2314
2231 Devine Street Suite 202
Columbia, South Carolina 29205
Phone: (803) 799-0905
mwhardee@bellsouth.net

**WATERS & KRAUS, LLP**
Charles S. Siegel
Texas Bar No. 18341875
*Admitted Pro Hac Vice*
3141 Hood Street, Suite 700
Dallas, Texas  75219
Phone:  (214) 357-6244
siegel@waterskraus.com
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2021, the foregoing instrument has been served electronically to all counsel of record in this case.

<u>    /s/   Mark W. Hardee</u>
Mark W. Hardee