IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James Willson Chesher and Cheryl Ann Chesher,<br><br>*Plaintiffs*,<br><br>v.<br><br>3M Company, *et al.*,<br><br>*Defendants*. | Civil Action No. 3:15-cv-2123-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Plaintiffs' motion for vacatur (Dkt. No. 326). For the reasons set forth below, the Court denies Plaintiffs' motion.

**Background**

This case originally concerned Plaintiff James Willson Chesher's alleged exposure to asbestos while serving in the Navy. Plaintiffs filed this action in state court and, on May 22, 2015, it was removed to federal court. (Dkt. No. 1). Judge David C. Norton was assigned to the case.

Plaintiffs brought claims against 25 corporate defendants. Eventually, however, Plaintiff settled with or otherwise dismissed all defendants except Crane Co. ("Crane").

On March 31, 2017, after holding an evidentiary hearing, Judge Norton granted Crane's motion to exclude the testimony of Plaintiff's expert Dr. Carlos Bedrossian. (Dkt. Nos. 308, 312). At the time, Crane was the only remaining defendant. On March 29, 2018, Judge Norton granted Crane's renewed motion for summary judgment. (Dkt. No. 323). After entering judgment for Crane, the case was closed. Plaintiffs did not file an appeal.

Over three years later, on November 3, 2021, Plaintiffs filed a motion for vacatur pursuant to Fed. R. Civ. P. 60(b)(6) and 28 U.S.C. § 455(b). (Dkt. No. 326). Based on the undisputed record before the Court, Plaintiffs discovered, around July 22, 2021, that during the pendency of this

1

action, Judge Norton owned stock in three of the defendants in this case: General Electric Co., 3M Co., and Verizon Communications Inc. (the "Subject Entities"). (*Id.* at 2) (citing pertinent financial disclosures). A review of the docket also reveals that, at Plaintiffs' request, the Subject Entities were dismissed from this action under Fed. R. Civ. P. 41. (Dkt. Nos. 235, 237) (General Electric Co.); (Dkt. No. 219) (3M Co.); (Dkt. No. 139) (Verizon Communications Inc.). Plaintiffs argue that Judge Norton's holding stock in the Subject Entities was an unwaivable conflict under § 455(b) and that the appropriate remedy for this conflict is vacatur of the judgment entered for Crane. (Dkt. No. 326). Crane opposes Plaintiffs' motion. (Dkt. No. 327). Plaintiffs filed a reply. (Dkt. No. 328).

Plaintiffs' motion is fully briefed and ripe for disposition.

## **Legal Standard**

Rule 60(b) of the Federal Rules of Civil Procedure permits the Court to relieve a party from a judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) and (6). The motion for relief "must be made within a reasonable time," including "no more than a year after the entry of judgment or order" if the grounds for relief are "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(c)(1).

Recusal of federal judges is generally governed by 28 U.S.C. § 455. Subsection (b) of § 455 provides a list of specific instances where a federal judge's recusal is mandated, regardless of the perception of a reasonable observer. *Liteky v. United States*, 510 U.S. 540, 567 (1994) (Kennedy, J., concurring). Pertinent here, subsection (b)(4) mandates recusal where a judge, individually or as a fiduciary, "has a financial interest in the subject matter in controversy or in a party to the proceeding." § 455(b)(4); *Liljberg v. Health Services Acquisition Corp.*, 486 U.S. 874,

2

859 n.8 (1988) (observing that "§ 455(e) specifies that a judge may not accept a waiver on any ground for disqualification under § 455(b)"). "Financial interest" means "ownership of a legal or equitable interest, however small." § 455(d)(4). But "[a]lthough § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." *Liljeberg*, 486 U.S. at 862. Instead, Congress "wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation." *Id.*

In *Liljeberg,* the Supreme Court affirmed the Fifth Circuit's decision to vacate a district court judge's final judgment where that judge should have disqualified himself under § 455(a) due to an appearance of impropriety. *Id.* at 852. Although the Court agreed with the Fifth Circuit that vacatur was appropriate under the facts of that case, it explained that harmless error analysis can apply to violations of § 455(a). *Id.* at 862 ("As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a)."). The Court concluded that, when deciding whether to vacate a judgment for violation of § 455(a), a court should consider: (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that the denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* at 864. Courts apply these factors when analyzing cases under § 455(b) as well as § 455(a). *See Shell Oil Co. v. United States*, 672 F.3d 1283, 1292 (Fed. Cir. 2012) (citing cases from the Eleventh and Fifth circuit to this effect); *Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, 1420–1421 (Fed. Cir. 1989).

## Analysis

As a preliminary matter, the Court finds that by failing to recuse himself despite owning

3

stock in the Subject Entities, Judge Norton violated § 455(b)(4). The conflict was unwaivable and required Judge Norton to recuse himself from the action and direct the clerk to reassign the matter. *See e.g.*, *Liljberg*, 486 U.S. at 859 n.8; *Shell Oil Co.*, 672 F.3d at 1290; § 455(e). This violation, however, does not end the Court's inquiry. Under the factors articulated in *Liljberg*, the Court must now consider an appropriate remedy. *See* 486 U.S. at 862 ("As in other areas of the law, there is surely room for harmless error[.] There need not be a draconian remedy for every violation of § 455(a)" and § 455(b).).

As to the first factor, the injustice Plaintiffs identify is Judge Norton's order on Crane's motion to exclude Plaintiffs' expert. (*Id.* at 5-7) (expressing disagreement with said order's reasoning). Thus, Plaintiffs conclude, because Judge Norton's ruling "benefited all defendants in asbestos litigation," Plaintiffs were prejudiced and vacatur of the judgment for Crane is necessary. *See* (*id.* at 6-7).

The Court rejects Plaintiffs' argument. Namely, while Plaintiffs makes clear that they disagree with Judge Norton's order, disagreement does not constitute "injustice" under § 455(b). Specifically, Plaintiffs nowhere explain how the order excluding Plaintiffs' expert benefited the Subject Entities as opposed to Crane—especially given Plaintiffs voluntarily dismissed the Subject Entities from this litigation. *Compare* (Dkt. No. 326 at 5) ("The most immediate harm . . . is that the Court wrote a lengthy opinion striking plaintiffs' expert, and then granted summary judgment . . . depriv[ing] plaintiffs any chance of recovering compensation from Crane.") *and* (*id.* at 6) (arguing hypothetical future harm to *other* plaintiffs and hypothetical future benefits to the Subject Entities because "Judge Norton's ruling [] greatly benefited all defendants in asbestos litigation, including the defendants in which he owned and still owns stock") *with Shell Oil Co.*, 672 F.2d at 1293 (finding prejudice under § 455(b) where trial court discovered conflict after entering final

4

judgment, "br[oke] [defendant] Texaco [the conflicted party] out of this case, vacate[d] all orders as they relate[d] to Texaco" and had the clerk reassign Texaco to a different judge because, "given the identity of the issues involved, the parties [agreed] . . . a decision in [the original] case [] *control[led] the outcome* in the severed case involving Texaco") (emphasis added).[1] Here, unlike in *Shell Oil Co.*, Judge Norton made no substantive rulings as to the Subject Entities nor were Judge Norton's later rulings as to Crane premised on, directly beneficial to, or binding on the Subject Entities. These undisputed facts belie Plaintiffs' contention that Judge Norton's violation of § 455(b)(4) harmed them.

In sum, the Court finds that the first *Liljeberg* factor weighs in favor of Crane.

Relatedly, the Court finds that the third *Liljeberg* factor favors Crane as well because the facts here do not "risk [] undermining the public's confidence in the judicial process." The Subject Entities were dismissed from this litigation at *Plaintiffs'* request—not, for example, through motions to dismiss which Judge Norton ruled on. Thus, there is no risk that an objective observer would question Judge Norton's impartiality when viewing his orders on Crane's dispositive motions. *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 129 (2d Cir. 2003) (analyzing § 455(b)(4) in light of § 455(a) and noting "[n]o appearance of partiality can attend a situation in which the judge has decided nothing. Or a district judge may issue routine, standard scheduling orders in a large number of newly filed cases, missing a disqualifying party in a case with several parties. . . . There is no reasonable appearance of partiality in such circumstances."); *Shell Oil Co.*, 672 F.3 at 1293 (finding a risk of undermining the public's confidence in the judicial

---

[1] Specifically, rulings in the original action would have "prejudicial effect" on the government in the severed action through the doctrine of collateral estoppel. *See Shell Oil Co. v. United States*, 672 F.3d 1283, 1291, 1293 (Fed. Cir. 2012) (noting that § 455 prohibits judges from fashioning remedies beyond those available in § 455(f)).

5

process "given that, several months after disclosing a financial interest in 'Chevron Texaco Stock,' the trial judge [nevertheless]: (1) denied the government motion for reconsideration; and (2) entered final judgment in excess of $86 million in favor of the Oil Companies"); *Liljeberg*, 486 U.S. at 865.

      Last, the Court finds denial of relief unlikely to produce injustice in other cases. In their briefing, Plaintiffs fail to analyze or discuss this factor explicitly. *See generally* (Dkt. No. 326). As noted above, Plaintiffs never appealed Judge Norton's ruling excluding their expert—a ruling Plaintiffs characterize in their briefing as "unusual" and "outside the mainstream." *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) ("[I]t goes without saying that a Rule 60 motion is not a substitute for appeal from an underlying judgment."). At bottom, the Court finds that allowing Plaintiffs to reopen a litigation for which Plaintiffs declined to pursue an appeal because of a later discovered conflict that concerned entities voluntary dismissed from this case would be unfair to Crane, and ultimately serve no deterrent function. *See Polaroid Corp.*, 867 F.2d at 1420 (affirming order denying Kodak's motion to vacate and noting, "[a]pplying the Court's guidance in *Liljeberg* to the facts of this case, the risk of injustice to the parties weighs far more heavily on Polaroid's side of the scales; there is little or no risk of injustice in other cases, the present denial resting on the specific facts of this case; and the public's confidence in the judicial process is less likely to be undermined when its result is adhered to in repose, and would be more likely to be undermined if the law were to countenance a sundering of the result six and one-half years later on grounds other than the merits")[2]; *Chase Manhattan Bank*, 343 F.3d at 132

---

[2] In *Polaroid:* (1) the trial judge informed the parties at the outset of trial that her mother-in-law owned stock in Kodak but that she did not think it was a disqualifying conflict; (2) at the time of final judgment, neither the judge nor her spouse had a financial interest in a party to the proceeding (and thus § 455(b)(4) did not apply); (3) years later, after the judgment was appealed, the Federal Circuit affirmed, and the case was returned to the district court for assessment of damages and trial

(vacating and ordering new trial under § 455(a) where district judge, after receiving mandate of appellate court, realized he held stock in party to case, divested himself of the stock and, acting under 28 U.S.C. § 455(f), conducted requisite proceedings on remand. Because the disqualifying circumstances appeared in 1997, they could not be cured by divestiture in 2000, long after bench trial, findings of fact, and issuance of judgment); *see also id.* (noting vacatur would "prevent a substantive injustice in some future case by encouraging a judge . . . to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered" especially given district judge held a bench trial where evidence admitted clearly identified conflict, tending to show judge "knew of his disqualifying financial interest . . . *at the time* of his 1997 decision") (emphasis added) (quoting *Liljeberg*, 486 U.S. 867-68)).

Therefore, for the reasons stated above, the Court denies Plaintiffs' motion for vacatur pursuant to § 455(b).

Additionally, in their reply, Plaintiffs argue in passing for vacatur under § 455(a). (Dkt. No. 328 at 7-8). While the argument is procedurally improper as Plaintiffs did not raise it in their original brief, *see, e.g.*, *Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in [an] opening brief, but raised for the first time in reply, are deemed waived."), the Court addresses the argument for completeness's sake.

Section 455(a) states that "[a]ny judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might be questioned." The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all

---

on remaining claims whereby the judge held a pretrial conference explaining that her mother-in-law died and that "she was *sua sponte* disqualifying herself because she was a legatee and her husband was executor of the estate"; and (4) Kodak sought to vacate *all* of the judge's orders after six and a half years of litigation. *Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, 1416-17 (Fed. Cir. 1989).

the facts would conclude. *See Chase Manhattan Bank*, 343 F.3d at 127 (citing *Liljeberg*, 486 U.S. at 860-61)).

For reasons substantially like those articulated above, the Court denies Plaintiffs' motion as to § 455(a). Given that Plaintiffs voluntarily dismissed the Subject Entities before Judge Norton ruled on Crane's dispositive motions, and given these later rulings were not premised on, directly beneficial to, or otherwise binding on the Subject Entities, the Court finds that no reasonable person knowing all these facts would find an appearance of partiality requiring disqualification under § 455(a). *See Liljeberg*, 486 U.S at 864 ("Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all § 455(a) violations."); *Chase Manhattan Bank*, 343 F.3d at 129 (analyzing § 455(b)(4) in light of § 455(a) and noting "[n]o appearance of partiality can attend a situation in which the judge has decided nothing. Or a district judge may issue routine, standard scheduling orders in a large number of newly filed cases, missing a disqualifying party in a case with several parties. . . . There is no reasonable appearance of partiality in such circumstances.").

Accordingly, the Court denies Plaintiffs' motion for vacatur pursuant to § 455(a).

### Conclusion

For the reasons stated above, Plaintiffs' motion for vacatur (Dkt. No. 326) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 6, 2022
Charleston, South Carolina